IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ARGONAUT INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| PEABODY ENERGY CORPORATION, PEABODY MIDWEST OPERATIONS, LLC, PEABODY BEAR RUN MINING, LLC, PEABODY GATEWAY NORTH MINING, LLC, NEW MEXICO COAL RESOURCES, LLC, EL SEGUNDO COAL COMPANY, LLC, PEABODY POWDER RIVER OPERATIONS, LLC, BTU WESTERN RESOURCES, INC., and PEABODY MIDWEST MINING, LLC, | ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

Plaintiff Argonaut Insurance Company ("Argo" or the "Surety"), for its Complaint and Application for Injunctive Relief (the "Complaint") against Defendants Peabody Energy Corporation, Peabody Midwest Operations, LLC, Peabody Bear Run Mining, LLC, Peabody Gateway North Mining, LLC, New Mexico Coal Resources, LLC, El Segundo Coal Company, LLC, Peabody Powder River Operations, LLC, BTU Western Resources, Inc., and Peabody Midwest Mining, LLC ("Defendants" or "Indemnitors"), states and alleges as follows:

## PARTIES

1.      Argonaut Insurance Company is an Illinois corporation maintaining its principal place of business at 225 West Washington Street, 24th Floor, Cook County, City of Chicago, Illinois 60606.

2.      At all times relevant, Peabody Energy Corporation is a Missouri corporation with its principal place of business located in St. Louis County, City of St. Louis, Missouri. Peabody Energy Corporation may be served with process through its Registered Agent, CSC-Lawyers Incorporating Service Company, at 221 Bolivar Street, Jefferson City, Missouri 65101.

3.      At all times relevant, Peabody Midwest Operations, LLC is a Delaware limited liability company. Upon information and belief, the citizenship of each of the members of Peabody Midwest Operations, LLC is Missouri and/or Delaware.  Peabody Midwest Operations, LLC may be served with process through its Registered Agent, Corporation Service Company, at 251 Little Falls Drive, Wilmington, Delaware 19808.

4.      At all times relevant, Peabody Bear Run Mining, LLC is a Delaware limited liability company.  Upon information and belief, the citizenship of each of the members of Peabody Bear Run Mining, LLC is Missouri and/or Delaware. Peabody Bear Run Mining, LLC may be served with process through its Registered Agent, Corporation Service Company, at 251 Little Falls Drive, Wilmington, Delaware 19808.

5.      At all times relevant, Peabody Gateway North Mining, LLC is a Delaware limited liability company. Upon information and belief, the citizenship of each of the members of Peabody Gateway North Mining, LLC is Missouri and/or Delaware. Peabody Gateway North Mining, LLC may be served with process through its Registered Agent, Corporation Service Company, at 251 Little Falls Drive, Wilmington, Delaware 19808.

2

721.003

6.      At all times relevant, New Mexico Coal Resources, LLC is a Delaware limited liability company.  Upon information and belief, the citizenship of each of the members of New Mexico Coal Resources, LLC is Missouri and/or Delaware. New Mexico Coal Resources, LLC may be served with process through its Registered Agent, Corporation Service Company, at 251 Little Falls Drive, Wilmington, Delaware 19808.

7.      At all times relevant, El Segundo Coal Company, LLC is a Delaware limited liability company.  Upon information and belief, the citizenship of each of the members of El Segundo Coal Company, LLC is Missouri and/or Delaware. El Segundo Coal Company, LLC may be served with process through its Registered Agent, Corporation Service Company, at 251 Little Falls Drive, Wilmington, Delaware 19808.

8.      At all times relevant, Peabody Powder River Operations, LLC is a Delaware limited liability company. Upon information and belief, the citizenship of each of the members of Peabody Powder River Operations, LLC is Missouri and/or Delaware. Peabody Powder River Operations, LLC may be served with process through its Registered Agent, Corporation Service Company, at 251 Little Falls Drive, Wilmington, Delaware 19808.

9.      At all times relevant, BTU Western Resources, Inc. is a Delaware corporation with its principal place of business located in St. Louis County, City of St. Louis, Missouri. BTU Western Resources, Inc. may be served with process through its Registered Agent, Corporation Service Company, at 251 Little Falls Drive, Wilmington, Delaware 19808.

10.     At all times relevant, Peabody Midwest Mining, LLC is an Indiana limited liability company.  Upon information and belief, the citizenship of each of the members of Peabody Midwest Mining, LLC is Indiana, Missouri and/or Delaware. Peabody Midwest Mining, LLC may

3

721.003

be served with process through its Registered Agent, Corporation Service Company, at 135 North Pennsylvania Street, Suite 1610, Indianapolis, Indiana 46204.

## JURISDICTION AND VENUE

11.     This Court has personal jurisdiction over each of the Indemnitors because, upon information and belief: (1) they all maintain systematic and continuous minimum contacts within the State of Missouri, and particularly within this District; (2) all or a substantial part of the events or omissions giving rise to the claims alleged in this lawsuit occurred, or a substantial part of property that is the subject of this action is situated, in this District; and (3) Indemnitors contractually agreed that, "[i]in any legal proceeding brought by or against the Surety that in any way relates to [the General Indemnity Agreement], each Indemnitor for itself and its property, irrevocably and unconditionally submits to the exclusive jurisdiction, at the sole exclusive option of the Surety [here, the United States District Court for the Eastern District of Missouri], of the courts in any state in which . . . any Contract is performed.  Indemnitors hereby irrevocably and unconditionally submit to the jurisdiction of said courts and waive and agree not to assert any claim that they are not subject to the jurisdiction of any such court."  *See* **Exhibit B**, ¶ 26.

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy between these parties exceeds $75,000, exclusive of interest and costs, and the dispute is between citizens of different states.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to the claims alleged in this lawsuit occurred, or a substantial part of property that is the subject of this action is situated, in this District.

721.003

## NATURE OF THE CASE

14.     At the request of Peabody Energy Corporation, Argo, as Surety, issued the following bonds at the request of Indemnitors:

| Bond Number | Principal Name | Obligee Name | Bond Amount |
|---|---|---|---|
| SUR0024108 | Peabody Powder River Mining, LLC | State of Wyoming | $75,000,000 |
| INT0050708 | Wambo Coal Pty LTD | Taiwan Power Company | $400,000 |
| SUR0024106 | Peabody Midwest Mining, LLC | State of Indiana, Department of Natural Resources | $20,230,280 |
| SUR0024109 | Peabody Powder River Mining, LLC | United States of America - USDI Bureau of Land Management | $14,427,000 |
| SUR0056755 | Wanda J. Martin | State of Missouri, Office of Notary Public | $10,000 |
| INT0048808 | Wambo Coal Pty LTD | Taiwan Power Company | $400,000 |
| INT0048810 | Wilpinjong Coal Pty LTD | Taiwan Power Company | $400,000 |
| SUR0024105 | Peabody Natural Resources Company | Mining and Minerals Division of the Energy, Minerals & Natural Resources Department | $43,223,730 |
| SUR0024092 | Peabody Coulterville Mining, LLC | United States Army Corps of Engineers, St. Louis District | $8,000 |
| SUR0024097 | Sage Creek Holdings, LLC | State of Colorado, State Board of Land Commissioners | $1,000 |
| SUR0032325 | Sage Creek Holdings, LLC | State of Colorado, State Board of Land Commissioners | $1,000 |
| INT0054604 | Peabody Australia Mining Pty LTD | Newcastle Coal Infrastructure Group Pty Limited | $9,163,084.19 |
| INT0048199 | Peabody Energy Australia Pty LTD | DBCT Management Pty Ltd | $12,315,351.56 |
| INT0053947 | Peabody Coppabella Pty LTD | State of Queensland | $199,692.57 |
| INT0054605 | Peabody (Burton Coal) Pty LTD | State of Queensland | $8,014,703.49 |
| INT0048200 | Peabody (Bowen) Pty LTD | State of Queensland | $5,689,900.00 |

721.003

| INT0048202 | Wambo Coal Pty LTD | The Minister for Natural Resources NSW | $6,694,000 |
| INT0048203 | Wilpinjong Coal Pty LTD | The Minister for Natural Resources NSW | $6,694,000 |
| | | TOTAL PENAL SUM: | **$202,871,741.81** |

(collectively, the "Bonds").

15. The Bonds are predominately reclamation-type bonds issued to public entities and were and are presumably required for the Bond principals' continuing and ongoing business operations.

16. The Indemnitors have failed to release the Surety from the Bonds or to post sufficient collateral despite Argo's written letters on August 28, 2020, October 23, 2020 and October 27, 2020, demanding the same. True and accurate copies of these letters are collectively attached herein as **Exhibit A**.

17. The total face amount of unreleased or potential liability of the Surety under the Bonds is $202,871,741.81.

18. In consideration for and specifically to induce the Surety to furnish the Bonds, the Indemnitors executed a General Indemnity Agreement on or about April 3, 2017 (the "GIA"). A true and correct copy of the GIA is attached hereto as **Exhibit B**.

19. Under the GIA, the Indemnitors jointly and severally agreed, among other things, that:

> 12. **Surety's Rights to Release of Bonds and Indemnitors Waiver.**
> …[W]ithin thirty (30) days of receipt of the Surety's written demand, the Indemnitors shall procure the full and complete release of the Bond(s) by providing competent written evidence of release satisfactory to the Surety, in its sole discretion. If Indemnitors fail to provide the aforementioned release Indemnitors shall, within an additional seven (7) days, provide the Surety with collateral in the amount of 100% of all unreleased liability under the Bond(s). The liability shall be determined at the time of the Surety's written demand. Collateral will be in the form of (a) an irrevocable letter of credit in form, content, and issued by a

6

financial institution acceptable to the Surety; (b) a pledged money market account, in the form, content, and issued by a financial institution acceptable to the Surety; and/or (c) other collateral in form, content, and substance acceptable to the Surety, in its sole discretion. Collateral previously provided to the Surety may be utilized to establish compliance with this provision. If the liability subsequently increases, then it is the Indemnitors' responsibility to ensure continued compliance with this provision at all times.

The Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest this requirement to provide collateral under this Agreement (individually and collectively, the "Collateral Requirement"). The Indemnitors stipulate and agree that the Surety will suffer irreparable harm and will not have an adequate remedy at law should Indemnitors fail to perform the Collateral Requirement and further agree as a result that the Surety is entitled to specific performance of the Collateral Requirement. The Surety's failure to act to enforce its right to specific performance shall not be construed as a waiver of that right, which right may be enforced at any time at the Surety's sole discretion…

**Exhibit B**, ¶ 12.

20.     The Surety relied on this provision and all other provisions of the Bonds (including paragraph 11 setting out the Indemnitors' joint and several, full power and authority to execute the GIA and ability to obtain the Bonds upon demand), in issuing the Bonds.

21.     This dispute involves the unconditional rights of the Surety and specific obligations of the Indemnitors, who are jointly and severally liable upon demand, to procure the full and complete release of the Bonds or to provide collateral of 100% of all unreleased liability under the Bonds.  The Surety opted to exercise its unconditional rights under paragraph 12 of the GIA, based on its belief that the financial condition of the Indemnitors has been or is deteriorating and/or that some other change may adversely impact the Surety's risk under the Bonds.

22.     The Surety sent letters on August 28, 2020, October 23, 2020 and October 27, 2020 to the Indemnitors, demanding that each procure the full and complete release of the Bonds (which are in the aggregate penal amount of $202,871,741.81). *See* **Exhibit A**.

7

23.     Upon information and belief, the letters attached to this Complaint as **Exhibit A** were received by the Indemnitors.

24.     The letters also assert a demand, pursuant to paragraph 12 of the GIA, that each Indemnitor provide sufficient collateral to the Surety.

25.     Among other things, an acceptable form of collateral under the GIA is an irrevocable letter of credit in form, content, and issued by a financial institution acceptable to the Surety.

26.     The Indemnitors are jointly and severally liable to the Surety to provide the requested collateral.

27.     To date, Indemnitors have provided $75,000,000 in collateral to the Surety; but this is not sufficient to protect the Surety under the circumstances at issue here.

28.     Accordingly, Indemnitors are currently required to either: (1) procure the full and complete release of the Bonds (in the aggregate penal amount of $202,871,741.81); or (2) provide collateral for up to 100% of all unreleased liability under the Bonds, or $127,871,741.81 in additional collateral, to the Surety, pursuant to the terms of the GIA.

29.     In the October 27, 2020 letters to the Indemnitors, the Surety demanded "an additional $65,000,000 in collateral to [the Surety] immediately;" this demand was specifically made "without prejudice to [the Surety's] right to seek full collateral in the future and is made pursuant to a full reservation of rights." (**Exhibit A**, October 27, 2020 Letters to Indemnitors).

30.     Despite the written letters which are attached as Exhibit A, Indemnitors failed or refused to: (1) procure the full and complete release of the Bonds (in the aggregate penal amount of $202,871,741.81); or (2) provide an irrevocable letter of credit in favor of the Surety, or other form of collateral acceptable to the Surety. Therefore, Indemnitors have disregarded, failed and/or

8

refused to perform their specific obligations and agreements, which are joint and several, set forth in the GIA.

31.     Indemnitors are, therefore, jointly and severally in default pursuant to paragraph 10 of the GIA.

32.     The continuing and ongoing operation of the Bond principals, which must be conducted in accordance with the laws of the applicable public jurisdictions, expose the Surety to substantial future damages unless the Bonds are released as required by the terms of the GIA.

33.     The Surety seeks and is entitled to equitable relief and specific performances of the obligations of the Indemnitors under the GIA.

34.     The Surety requests that this Court issue an Order compelling Indemnitors to obtain Surety's release from the Bonds or to furnish an irrevocable letter of credit in favor of the Surety in an amount acceptable to the Surety, but not to exceed 100% of all unreleased liability under the Bonds (an additional $127,871,741.81),  plus additional funds of $150,000 necessary to secure the expenses, court costs, and attorneys' fees incurred or at this point anticipated to be incurred in the future, in enforcing the GIA.

35.     The Surety has met all conditions precedent to filing this action.

## CAUSES OF ACTION

### COUNT ONE: Specific Performance to Procure a Full and Complete Release of the Bonds

36.     The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation were fully set forth here again at length.

37.     The parties entered into the GIA, as aforesaid.

38.     The Indemnitors are jointly and severally liable under the GIA, as aforesaid.

721.003

39.     Sufficient consideration exists with respect to the GIA; namely, the Indemnitors agreed to the language of paragraph 12, among other terms of the GIA, and in reliance thereon the Surety issued the Bonds.

40.     The Indemnitors each jointly and severally bargained for, stipulated to, agreed, and understood all the terms of the GIA, including each of their specific obligations therein.

41.     Indemnitors received the benefit of their bargain because the Surety, at the request and direction of the Indemnitors, furnished them with the Bonds.

42.     The explicit and unambiguous language of the GIA affords the Surety with the sole discretion to determine if (a) the Indemnitors' financial condition has been or is believed to be deteriorating or (b) there has been or is believed to be some other change that adversely impacts the Surety's risk under the Bonds.

43.     Upon information and belief, the Indemnitors' financial condition has been or is deteriorating or there has been or is some other change that adversely impacts the Surety's risk under the Bonds.

44.     Accordingly, the Surety has the right to demand the Indemnitors to, jointly and severally, cause the release of the Bonds or provide collateral of 100% of all unreleased liability under the Bonds if the Bonds are not so released.

45.     Despite the explicit and unambiguous language of the GIA and the written letters from the Surety (**Exhibit A**), Indemnitors have failed or refused to perform or honor their joint and several obligations to procure the full and complete release of the Bonds or post the requested collateral as aforesaid.

46.     On August 28, 2020, October 23, 2020 and October 27, 2020, the Surety sent letters to Indemnitors and specifically sought the procurement of the full and complete releases of the

721.003

Bonds or collateral up to 100% of all unreleased liability under the Bonds (an additional $127,871,741.81), in accordance with Paragraph 12 of the GIA and to secure enforcement of the unconditional rights of the Surety.

47.     Despite these demands, Indemnitors failed or refused to perform their specific obligations under the GIA, as aforesaid.

48.     The Indemnitors have stipulated and agreed that the Surety will suffer irreparable harm and will not have an adequate remedy at law as a result of the Indemnitors having failed to post the requested collateral following their failure or refusal to release the Bonds as demanded in the letters attached as **Exhibit A**.

49.     The Indemnitors have also agreed that the Surety is entitled to specific performance of the collateral requirements of the GIA, because the Surety will suffer irreparable harm and does not have an adequate remedy at law (by reason of Indemnitors' failure to post the requested collateral).

50.     Accordingly, the Surety's remedy at law is not adequate even if monetary damages might be available to the Surety in the future.

51.     The Surety is therefore entitled to a decree requiring Indemnitors to specifically perform their obligations under the GIA, namely, to return the Bonds to the Surety or post collateral of 100% of all unreleased liability under the Bonds.

52.     By failing to perform their specific obligation to procure the full and complete releases of Bonds or to post the collateral as demanded, Indemnitors are in default of the GIA.

53.     A decree of specific performance requiring Indemnitors to perform their obligations to procure the full and complete release of the Bonds, which Indemnitors agreed to do, or to post

721.003

the collateral requested, does not create or produce an inequity or undue hardship upon any of the Indemnitors.

54.     The Surety will be subjected to immediate or irreparable harm unless specific performance is granted because it will be deprived of its contractual right to cause Indemnitors to procure a full and complete release of the Bonds or to provide collateral in the amount of 100% of all unreleased liability under the Bonds, thereby denying the Surety the benefit of its bargain – the Surety would have never issued the Bonds without the Indemnitors' consent to procure a full and complete release of the Bonds or to provide the required collateral.

55.     The balance of equities favors the unconditional rights of the Surety under the GIA and the entitlement of the Surety to enforce such unconditional rights and to require the Indemnitors to specifically perform its clear obligations thereunder.

56.     By virtue of the foregoing facts and based on the failure and/or refusal of the Indemnitors to perform their contractual obligations, the Surety is entitled to an equitable decree of this Court requiring Indemnitors to perform their specific obligations under the GIA, namely, to have the Indemnitors procure the full and complete release of the Bonds, or to provide collateral of 100% of all unreleased liability under the Bonds (up to the total sum of $202,871,741.81).

WHEREFORE, Plaintiff Argonaut Insurance Company respectfully prays for an equitable decree of this Court requiring the Indemnitors, jointly and severally, to perform their specific obligations under the GIA, namely, to procure the full and complete release of the Bonds, or to provide collateral in the amount of 100% of all unreleased liability under the Bonds (which is an additional $127, 871,741.81 for the total sum of $202,871,741.81); for pre-judgment and post-judgment interest; and for such other and further relief as the Court deems just and proper under the circumstances.

721.003

**COUNT TWO: Specific Performance to Provide Collateral in the Form of an
Irrevocable Letter of Credit**

57.     The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation were fully set forth here again at length.

58.     Despite the explicit and unambiguous language of the GIA and the written letters from the Surety, Indemnitors have failed or refused to perform or honor their specific obligation to provide an additional $127,871,741.81 in collateral in the form of an irrevocable letter of credit to the Surety for the total sum of $202,871,741.81, in order to secure 100% of the unreleased liability under the Bonds as required by paragraph 12 of the GIA.

59.     On August 28, 2020, October 23, 2020 and October 27, 2020, the Surety sent letters to Indemnitors, wherein the Surety specifically and unequivocally sought their joint and several compliance with and performance of paragraph 12 of the GIA.

60.     Despite these demands, none of the Indemnitors performed their specific obligations under the GIA; namely, no Indemnitor provided security to the Surety in the form of an irrevocable letter of credit in the amount of 100% of the unreleased liability of the Bonds, which is $202,871,741.81, as required by the GIA.

61.     The explicit and unambiguous language of the GIA affords the Surety with the sole discretion to determine if (a) the Indemnitors' financial condition has been or is believed to be deteriorating or (b) there has been or is believed to be some other change that adversely impacts the Surety's risk under the Bonds.

62.     The Surety's rights, under such circumstances, include, but are not limited to, the right to demand that the Indemnitors (each or jointly) procure the full and complete release of the Bonds or provide collateral in the amount of 100% of all unreleased liability of the Bonds ($202,871,741.81), if Indemnitors fail to provide the release of the Bonds.

13

63.     The Indemnitors have failed or refused to perform their specific obligations to procure the release of the Bonds or provide collateral of all unreleased liability under the Bonds, as demanded.

64.     By failing to perform their specific obligation to see to the release of the Bonds or to provide collateral in an amount of 100% of all unreleased liability under the Bonds, Indemnitors are in default of and have breached the GIA.

65.     The losses the Surety may sustain as a result of having issued the Bonds, enforcing the terms of the GIA, and not receiving collateral from the Indemnitors in the form of an irrevocable letter of credit of 100% of all unreleased liability under the Bonds ($202,871,741.81), is currently unascertainable and unliquidated.

66.     Accordingly, the Surety's remedy at law is not adequate even if monetary damages might be available to the Surety in the future, and the Surety is therefore entitled to a decree requiring Indemnitors to specifically perform their obligations under the GIA.

67.     Paragraph 12 of the GIA provides, in pertinent part (emphasis added):

> The Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest this requirement to provide collateral under this Agreement (individually and collectively, the "Collateral Requirement"). ***The Indemnitors stipulate and agree that the Surety will suffer irreparable harm and will not have an adequate remedy at law should Indemnitors fail to perform the Collateral Requirement and further agree as a result that the Surety is entitled to specific performance of the Collateral Requirement.***

**Exhibit B**, ¶ 12. Accordingly, Indemnitors stipulated and agreed that the Surety will suffer irreparable harm and that the Surety will not have an adequate remedy at law if Indemnitors fail or refuse to provide adequate collateral.

68.     The Indemnitors specifically bargained for, stipulated to, and understood all the terms of the GIA, including each of their specific obligations therein.

14

69.     Indemnitors received the benefit of their bargain because the Surety, at their request and direction, furnished them with the Bonds. A decree of specific performance requiring Indemnitors to perform their obligations to procure the full and complete release of the Bonds or, if they are unable to do so, to provide the Surety with collateral of 100% of all unreleased liability under the Bonds, which Indemnitors agreed to do, does not create or produce an inequity or undue hardship on any of the Indemnitors.

70.     The Surety will be subjected to immediate or irreparable harm and will not have an adequate remedy at law because Indemnitors have failed or refused to procure a full and complete release of the Bonds.

71.     Therefore, the Indemnitors must specifically perform their obligations under the GIA by, among things, providing collateral in the form of an irrevocable letter of credit for 100% of the unreleased liability under the Bonds (which is an additional $127, 871,741.81 for the total sum of $202,871,741.81).

72.     If the Surety is not granted an equitable decree by this Court requiring Indemnitors to provide collateral in the form of the irrevocable letter of credit, then the Surety will be denied the benefit of its bargain – the Surety never would have issued the Bonds without the Indemnitors' consent to procure the full and complete release of the Bonds or otherwise provide sufficient collateral.

73.     The balance of equities favors the unconditional rights of the Surety under the GIA and the entitlement of the Surety to enforce such unconditional rights and to require the Indemnitors to specifically perform its clear obligations thereunder.

74.     By virtue of the foregoing facts and based on the failure and/or refusal of the Indemnitors to perform their specific contractual obligations, the Surety is entitled to an equitable

721.003

decree of this Court requiring Indemnitors to perform their specific obligations, which the Indemnitors are specifically obligated to perform under the GIA, to provide collateral in the form of an irrevocable letter of credit for 100% of the unreleased liability under the Bonds.

WHEREFORE, Plaintiff Argonaut Insurance Company respectfully prays for an equitable decree of this Court requiring the Indemnitors, jointly and severally, to perform their specific obligations which the Indemnitors are specifically obligated to perform under the GIA, namely, to provide collateral in the form of an irrevocable letter of credit for 100% of the unreleased liability under the Bonds of up to an additional $127, 871,741.81, for the total sum of $202,871,741.81; for pre-judgment and post-judgment interest;  and for such other and further relief as the Court deems just and proper under the circumstances.

COUNT THREE: Breach of Contract

75.     The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation were fully set forth here again at length.

76.     As set forth above, the GIA is a contract between the parties, as sufficient consideration exists.

77.     The Surety has met its obligations by issuing the Bonds.

78.     However, the Indemnitors have failed or refused to perform or honor their specific obligations under the GIA to procure the full and complete release of the Bonds and/or to provide collateral in an amount to secure 100% of the unreleased liability in connection with the Bonds, despite the written demands from the Surety.

79.     The Indemnitors' failure and/or refusal to perform or honor their specific obligations under the GIA constitutes a default under and resulting breach of the GIA.

721.003

80.     As a result of the Indemnitors' default under and resulting breach of the GIA, the Surety has sustained and will sustain significant damages. Specifically, the Surety will be subjected to immediate or irreparable harm, in that the Indemnitors may be unable to perform or meet their specific obligations under the GIA and/or the Surety will be unable to secure enforcement of its unconditional rights thereunder.

WHEREFORE, Plaintiff Argonaut Insurance Company respectfully prays for judgment in its favor, and against Indemnitors, jointly and severally, on its claim for breach of contract; that judgment be rendered against Indemnitors jointly and severally for damages in excess of $75,000, exclusive of interest and costs, but otherwise to be proven at trial; additional funds of $150,000 necessary to secure the expenses, court costs, and attorneys' fees incurred or at this point anticipated to be incurred in the future, in enforcing the GIA; for pre-judgment and post-judgment interest; and for such other and further relief as the Court deems just and proper under the circumstances.

## COUNT FOUR: Declaratory Judgment

81.     The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation were fully set forth here again and length.

82.     As set forth above, the Indemnitors have failed or refused to perform or honor their specific obligations under the GIA to procure the full and complete release of the Bonds or to provide collateral in an amount to secure 100% of the unreleased liability under the Bonds, despite the Surety's written letters demanding the same.

83.     There are actual and justiciable controversies between the Surety and the Indemnitors because the Surety has a legally protectable interest at stake, namely, its contractual right to enforce the Indemnitors to jointly or severally comply with the terms of the GIA.

84.     A declaratory judgment issued by this Court will resolve outstanding issues between the Surety and the Indemnitors, and allow the Surety to enforce its unconditional rights and hold the Indemnitors to their specific obligations under the GIA.

85.     By reason on the foregoing, the Surety is entitled to a declaratory judgment from this Court.

WHEREFORE, Plaintiff Argonaut Insurance Company respectfully prays for a declaratory judgment in its favor, and against Indemnitors, jointly and severally, proclaiming under the GIA; that the Surety has unconditional rights; that the Indemnitors have specific obligations, upon demand; and that the Indemnitors must procure the full and complete release of the Bonds and/or post collateral in the form of an irrevocable letter of credit in the total sum of $202,871,741.81 to secure 100% of the unreleased liability in connection with the Bonds and/or in the enforcement of the GIA as the Indemnitors have failed or refused to perform their specific obligations thereunder despite the written demand of the Surety; that the Court award the expenses, fees, costs, and attorney's fees incurred by the Surety; for pre-judgment and post-judgment interest; and for such other and further relief as the Court deems just and proper under the circumstances.

## COUNT FIVE: Indemnity

86.     The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation were fully set forth here again and length.

87.     The GIA requires Indemnitors to indemnify, hold harmless and exonerate the Surety:

> [F]rom and against any and all Losses, as well as any other expense that the Surety may incur or sustain as a result of or in connection with the furnishing, execution, renewal, continuation, or substitution of any Bond(s). Expenses include, but are not limited to: (a) the cost incurred by reason of making an independent investigation in connection with any Bond(s) or this Agreement; (b) the cost of

> procuring or attempting to procure the Surety's release from liability
> or a settlement under any Bond(s) upon or in anticipation of Losses,
> including the defense of any action brought in connection therewith;
> and (c) the cost incurred in bringing suit to enforce the Agreement
> against any Indemnitors.

**Exhibit A**, ¶ 2.

88.     The Surety has made written demands upon Indemnitors to comply with the terms and provisions of the GIA, to procure the full and complete release of the Bonds, or to post collateral of 100% of all unreleased liability under the Bonds (an additional $127, 871,741.81 for the total sum of $202,871,741.81).

89.     To date, Indemnitors have failed or refused to procure a full and complete release of the Surety from the Bonds or to post sufficient collateral, in breach of the GIA.

90.     Under the terms of the GIA, Indemnitors are liable to the Surety for the cost incurred by the Surety of procuring or attempting to procure the Surety's release from liability or a settlement under any Bonds upon or in anticipation of losses, including the defense of any action brought in connection therewith and the cost the Surety incurred in bringing suit to enforce the GIA against Indemnitors, as allowed by paragraph 2 of the GIA.

91.     The Surety hereby demands indemnity from the Indemnitors, jointly and severally, to pay over to the Surety all attorneys' fees, costs, expenses that it has incurred and is anticipated to incur, to enforce the terms of the GIA, which is currently estimated to be $150,000 (but which will likely exceed that sum).

92.     The Surety hereby demands indemnity from the Indemnitors, jointly and severally, to pay any additional amounts the Surety is required to or deems necessary or expedient in bringing this suit to enforce the GIA against Indemnitors and to recover the sums it is or will be owed, as allowed by paragraph 2 of the GIA, currently estimated to be $150,000 (but which will likely exceed that sum).

721.003

WHEREFORE, Plaintiff Argonaut Insurance Company respectfully prays for judgment in its favor, and against Indemnitors, jointly and severally, on its claim for indemnity under the GIA; that judgment be rendered against Indemnitors jointly and severally for damages expected to exceed $75,000 but otherwise to be proven at trial; additional funds of $150,000 necessary to secure the expenses, court costs, and attorneys' fees incurred or at this point anticipated to be incurred in the future, in enforcing the GIA; for pre-judgment and post-judgment interest; and for such other and further relief as the Court deems just and proper under the circumstances.

### COUNT SIX: Exoneration

93.     The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation were fully set forth here again and length.

94.     By virtue of the foregoing facts, the Surety is entitled to an equitable decree of this Court requiring Indemnitors to exonerate the Surety by satisfying their obligations under the GIA, and for such other relief as this Court deems just and proper.

WHEREFORE, Plaintiff Argonaut Insurance Company prays for an equitable decree of this Court requiring Indemnitors jointly and severally to exonerate it by satisfying their obligations under the GIA, including, but not limited to, requiring the Indemnitors to pay over to the Surety $150,000 to cover its estimated attorneys' fees and costs to enforce the terms of the GIA; and for such other relief as this Court deems just and proper under the circumstances.

### COUNT SEVEN: *Quia Timet*

95.     The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation were fully set forth here again and length.

96.     By virtue of the foregoing facts, the Surety is entitled to an equitable decree of quia timet because it fears future probable injury to its rights or interests.

20

721.003

WHEREFORE, Plaintiff Argonaut Insurance Company prays for an equitable decree of this Court quia timet to protect it from future probably injury to its rights or interests, and for such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

**BROWN & RUPRECHT, PC**

*/s/ Frank Wendt*
Frank Wendt,  34244(MO)
2323 Grand Boulevard, Suite 1100
Kansas City, MO 64108-2670
Telephone: 816.292.7000
Facsimile: 816.292.7050
Email: fwendt@brlawkc.com
***Attorney for Plaintiff Argonaut Insurance
Company***

721.003