**EXHIBIT A-1**



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

**ARGO SURETY**
Member Argo Group

August 28, 2020

<u>*Via Federal Express*</u>

Peabody Energy Corporation
Attention: Risk Manager
Peabody Plaza
701 Market St.
St. Louis, MO, 63101-1826

Re: Discharge Demand to Peabody Energy Corporation, Peabody Midwest Operations, LLC, Peabody Bear Run Mining, LLC, Peabody Gateway North Mining, LLC, New Mexico Coal Resources, LLC, El Segundo Coal Company, LLC, and Peabody Powder River Operations, LLC ("Indemnitors")

Dear Risk Manager::

On or about April 3, 2017, Peabody Energy Corporation, Peabody Midwest Operations, LLC, Peabody Bear Run Mining, LLC, Peabody Gateway North Mining, LLC, New Mexico Coal Resources, LLC, El Segundo Coal Company, LLC, and Peabody Powder River Operations, LLC ("Indemnitors") executed a General Indemnity Agreement ("GIA") for the benefit of Argonaut Insurance Company ("Argonaut") a copy of which is enclosed herewith. In reliance on that GIA, Argonaut issued a number of surety bonds which are listed on the schedule enclosed herewith as Exhibit "A". At present the total penal sums of all outstanding surety bonds issued by Argonaut pursuant to the GIA is $202,871,741.80.

Paragraph 12 of the GIA provides as follows:

> 12. **Surety's Rights to Release of Bonds and Indemnitors Waiver.** The Surety may, in its sole discretion, determine one or more of the following: (a) the Indemnitors financial condition has been or is believed to be deteriorating; or (b) there has been or is believed to be some other change that adversely impacts the Surety's risk under the Bond(s). In such an event, within thirty (30) days of receipt of the Surety's written demand, the Indemnitors shall procure the full and complete release of the Bond(s) by providing competent written evidence of release satisfactory to the Surety, in its sole discretion. If Indemnitors fail to provide the aforementioned release Indemnitors shall, within an additional seven (7) days, provide the Surety with collateral in the amount of 100% of all unreleased liability under the Bond(s). The liability shall be determined at the time of the Surety's written demand. Collateral will be in the form of (a) an irrevocable letter of credit in form, content, and issued by a financial institution acceptable to the Surety; (b) a pledged money market account, in the form, content, and issued by a financial institution acceptable to the Surety; and/or (c) other collateral in form, content, and substance acceptable to the Surety, in its sole discretion. Collateral previously provided to the Surety may be utilized to establish compliance with this provision. If the liability subsequently increases, then it is the Indemnitors' responsibility to ensure continued compliance with this provision at all times.
>
> The Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest this requirement to provide collateral under this Agreement (individually and collectively, the "Collateral Requirement"). The Indemnitors stipulate and agree that the Surety will not have an adequate remedy at law should Indemnitors fail to perform the Collateral

13100 Wortham Center Drive, Suite 290
Houston, TX 77065

www.argolimited.com

T 281 640 7918

**ARGO SURETY**
Member Argo Group

Requirement and further agree as a result that the Surety is entitled to specific performance of the Collateral Requirement. The Surety's failure to act to enforce its right to specific performance shall not be construed as a waiver of that right, which right may be enforced at any time at the Surety's sole discretion. Indemnitors further agree that this Collateral Requirement shall not limit or be deemed a waiver of the Surety's other rights, which it may exercise in its sole discretion, under this Agreement or otherwise to cancel Bond(s), to demand collateral, or to take any other actions the Surety deems necessary and/or prudent, in its sole discretion, to mitigate actual or potential Losses under any and all Bond(s) written in accordance with this Agreement. The exercise of such additional rights shall not be contingent upon the Surety's enforcement of this provision. Collateral to be provided to the Surety shall be sent by delivery only for overnight packages: Attn: Treasurer, Argo Surety, 175 E. Houston St., Suite 1300, San Antonio, TX 78205.

Please be advised that, in accordance with Section 12 of the GIA, Argonaut has determined that the Indemnitors' financial condition is deteriorating or is believed to be deteriorating and/or that some other change adversely impacts the Surety's risk under the Bond(s). Accordingly, this is a demand that within thirty (30) days of the date of your receipt of this letter, i.e. by September 28, 2020 you obtain and furnish to Argonaut satisfactory written evidence of the release of each and every bond listed on Exhibit "A" hereto. A satisfactory release must generally be provided in writing by the obligee on each bond, expressly reference Argonaut and the bond number and release Argonaut of all liability on the bond, past, present and future.

If you are unable to obtain the release of a bond then, pursuant to paragraph 12 you must provide Argonaut with collateral in the amount of 100% of all unreleased liability under the Bond(s). At present, Indemnitors has posted a $20,500,000 Letter of Credit with Argonaut. If you so elect, you may increase the amount of the Letter of Credit to $85,500,000 or you may contact the undersigned to make arrangements for a pledged money market account or other arrangements acceptable to Argonaut.

In closing, please be advised that any and all of Argonaut's rights, defenses, etc., at law, in equity, under the Bond, the GIA or otherwise are expressly herein reserved. Furthermore, we trust you understand the joint and several indemnity obligations of the Principal and Indemnitors to the Surety.

Please contact the undersigned should you have any questions regarding this demand.

Sincerely,
Argonaut Insurance Company

By:   Robert G. Lavitt, Esq.
      Vice President, Director of Surety Claims, Counsel

13100 Wortham Center Drive, Suite 290
Houston, TX 77065

www.argolimited.com

T 281 640 7918

## Exhibit A

| Bond Number | Principal Name | Obligee Name | Bond Amount |
|---|---|---|---|
| SUR0024108 | Peabody Powder River Mining, LLC | State of Wyoming | $75,000,000 |
| INT0050708 | Wambo Coal Pty Ltd | Taiwan Power Company | $400,000 |
| SUR0024106 | Peabody Midwest Mining, LLC | State of Indiana, Department of Natural Resources | $20,230,280 |
| SUR0024109 | Peabody Powder River Mining, LLC | United States of America – USDI Bureau of Land Management | $14,427,000 |
| SUR0056755 | Wanda J. Martin | State of Missouri, Office of Notary Public | $10,000 |
| INT0048808 | Wambo Coal Pty Ltd | Taiwan Power Company | $400,000 |
| INT0048810 | Wilpinjong Coal Pty Ltd | Taiwan Power Company | $400,000 |
| SUR0024105 | Peabody Natural Resources Company | Mining and Minerals Division of the Energy, Minerals & Natural Resources Department | $42,223,730 |
| SUR0024092 | Peabody Coulterville Mining, LLC | United States Army Corps of Engineers, St. Louis District | $8,000 |
| SUR0024097 | Sage Creek Holdings, LLC | State of Colorado, State Board of Land Commissioners | $1,000 |
| SUR0032325 | Sage Creek Holdings, LLC | State of Colorado, State Board of Land Commissioners | $1,000 |
| INT0054604 | Peabody Australia Mining Pty Ltd | Newcastle Coal Infrastructure Group Pty Limited | $9,163,084.19 |
| INT0048199 | Peabody Energy Australia Pty Ltd | DBCT Management Pty Ltd | $12,315,351.56 |
| INT0053947 | Peabody Coppabella Pty Ltd | State of Queensland | $199,692.57 |
| INT0054605 | Peabody (Burton Coal) Pty Ltd | State of Queensland | $8,014,703.49 |
| INT0048200 | Peabody (Bowen) Pty Ltd | State of Queensland | $5,689,900.00 |
| INT0048202 | Wambo Coal Pty Ltd | The Minister for Natural Resources NSW | $6,694,000 |
| INT0048203 | Wilpinjong Coal Pty Ltd | The Minister for Natural Resources NSW | $6,694,000 |

ARGO SURETY
Member Argo Group

13100 Wortham Center Drive, Suite 290
Houston, TX 77065

www.argolimited.com

T 281 640 7918



# ARGONAUT INSURANCE COMPANY
## GENERAL INDEMNITY AGREEMENT

This General Indemnity Agreement (hereinafter "Agreement") is made and entered into by the undersigned, hereinafter referred to individually and/or collectively, as "Indemnitors", for the benefit of Argonaut Insurance Company and for itself, its subsidiaries, affiliates, parents, co-sureties, fronting companies and/or reinsurers and their successors and assigns, whether in existence now or formed hereafter, individually and collectively, as "Surety", for the purpose of indemnifying the Surety for any Bonds (as hereinafter defined) from any and all Losses (as hereinafter defined).

**Definitions**

The term "Bond(s)" shall mean any and all bonds including but not limited to surety bonds, undertakings, guarantees, or any contractual obligations, previously or hereafter executed, issued, procured, or undertaken by the Surety, whether directly or as a result of any asset purchase, merger, acquisition, or similar transaction, and any renewals or extensions thereof issued by Surety, or issued by another at the request of Surety, on behalf of Indemnitors, whether issued prior to or subsequent to the effective date of this Agreement.

The term "Indemnitors" shall mean an individual, corporation, partnership, Limited Liability Company (hereinafter called LLC), Limited Liability Partnership (hereinafter called LLP), joint venture, trust, estate or other legal entity, whether individually or jointly with others, who sign this Agreement or whose authorized representatives sign this Agreement or any other agreement that incorporates by reference the terms of this Agreement, whether the Indemnitors are individuals or entities. The Indemnitors warrant and represent that they have a material and beneficial interest in Surety's issuance of Bonds on behalf of the Indemnitors, and acknowledge that Surety would not issue such Bonds without each Indemnitors' agreement to reimburse Surety for all Losses arising under the Bonds.

The term "Losses" shall mean any and all (a.) sums paid by Surety to claimants under the Bonds, (b.) sums required to be paid to claimants by Surety but not yet, in fact, paid by Surety, by reason of execution of such Bonds, (c.) all costs and expenses incurred in connection with investigating, paying or litigating any claim under the Bonds, including but not limited to legal fees and expenses, technical and expert witness fees and expenses, (d.) all costs and expenses incurred in connection with enforcing the obligations of the Indemnitors under this Agreement including, but not limited to interest, legal fees and expenses, (e.) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds and/or (f.) all other amounts payable to Surety according to the terms and conditions of this Agreement.

As an inducement to the Surety and in consideration of the Surety's execution or procurement of the Bond(s), the Surety's refraining from canceling one or more Bond(s), and/or the Surety's assumption of one or more Bond(s) and for other good and valuable consideration, the receipt and sufficiency of which the Indemnitors hereby acknowledge, the Indemnitors hereby agree, for themselves, successors, and assigns, jointly and severally, as follows:

1. **Premium.** To pay all initial and renewal premiums for each Bond, as they fall due, until Surety has been provided with competent legal evidence, in its sole discretion, that the Surety has been fully released of liability under such Bond.

2. **Indemnity.** To indemnify, hold harmless and exonerate Surety from and against any and all Losses, as well as any other expense that the Surety may incur or sustain as a result of or in connection with the furnishing, execution, renewal, continuation, or substitution of any Bond(s). Expenses include, but are not limited to: (a) the cost incurred by reason of making an independent investigation in connection with any Bond(s) or this Agreement; (b) the cost of procuring or attempting to procure the Surety's release from liability or a settlement under any Bond(s) upon or in anticipation of Losses, including the defense of any action brought in connection therewith; and (c) the cost incurred in bringing suit to enforce this Agreement against any of the Indemnitors. Payments of amounts due the Surety hereunder, including interest, shall be made immediately upon the Surety's demand. In the event of any payment by the Surety the Indemnitors further agree that in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed. The vouchers or other evidence of any such payment(s) made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety, and of the Surety's good faith in making the payment(s). "Good Faith," as used in this paragraph and elsewhere in this Agreement, shall be deemed to include any and all payments, Losses, attorneys' fees, and other expenses except those made with deliberate and willful malfeasance.

3. **Application.** This agreement shall apply to any and all Bond(s) furnished for or on behalf of any or all of the following as follows:

   (a) One, some or all of the Indemnitors;
   (b) Any joint venture or other form of common enterprise in which Indemnitors were members at the time the Bond(s) were furnished;
   (c) Any present or future affiliate and/or subsidiary of Indemnitors;
   (d) Any third party at the request of Indemnitors, their subsidiaries and/or affiliates

4. **Collateral Security.** The Indemnitors acknowledge that the Bonds issued on their behalf are to be secured by collateral upon demand. In lieu of fully collateralizing the Bonds prior to their issuance and in consideration for the execution and/or delivery of one or more Bonds, the Indemnitors agree to deposit with the Surety, upon demand, an amount of money or other collateral security acceptable to the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor, equivalent to such amount that the Surety, in its sole judgment, shall deem sufficient to discharge any Losses or to protect it from any potential or anticipated Losses. If for any reason the Surety deems it necessary to increase the amount of any such deposit to cover any possible additional liability or loss, the Indemnitors shall deposit with the Surety, immediately upon the Surety's demand, an additional amount of collateral security equal to such increase. The Indemnitors acknowledge that the Surety would not issue any Bonds without the agreement of the Indemnitors to post collateral upon demand. Accordingly, the Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest this requirement to provide collateral under this Agreement (individually and collectively, the "Collateral Requirement"). The Indemnitors stipulate and agree that the Surety will suffer irreparable harm and will not have an adequate remedy at law should Indemnitors fail to perform the Collateral Requirement and further agree as a result that the Surety is entitled to specific performance of the Collateral Requirement.

5. **Surety Reserve.** The Surety may, in its sole discretion, establish a reserve to cover any actual or anticipated, liability, claim, suit, judgment, or Losses under any Bond. In such event, the Indemnitors will, immediately upon demand, deposit with the Surety a sum of money equal to such reserve, and any subsequent increase thereof, to be held by the Surety as collateral security on the Bond(s). Such funds will be used by the Surety to pay Losses or may be held by the Surety as collateral against potential future Losses. The Indemnitors hereby grant to the Surety a security interest in all money and other property now or hereafter delivered by such Indemnitors to the Surety for deposit in such reserve, and all income (if any) thereon. Any funds remaining after the Indemnitors' settlement or payment of all Losses will be returned to the Indemnitors within fifteen (15) days from the date of the Indemnitors' settlement or payment of the Losses.

6. **Access to Books and Records.** In the event the Surety receives a claim under any Bond or establishes, in its sole discretion, a reserve in anticipation of incurring Losses, the Surety shall have the right to reasonable access to the books, records, and accounts of the Indemnitors for the purpose of examining the same.

7. **Non-Impairment of Indemnitors' Obligations.** The obligations of the Indemnitors under this Agreement shall not be impaired by and Surety shall incur no liability on account of: (a) Surety's failure or refusal to furnish Bond(s), including final Bond(s) where Surety has furnished a bid Bond; (b) Surety's consent or failure to consent to changes in the terms and provisions of any Bond, or the obligation or performance secured by any Bond; (c) the taking, failing to take, or release of security, collateral, assignment, indemnity agreements and the like, as to any Bond; (d) the release by Surety, on terms satisfactory to it, of any Indemnitors; and/or (e) the Surety's cancellation of any Bond(s).

8. **Surety Priority.** The Indemnitors shall not seek indemnity, contribution or collection of any other outstanding obligation against any other Indemnitors or their property until the obligations of the Indemnitors to Surety under this Agreement have been satisfied in full.

9. **Confidentiality.** The Indemnitors acknowledge that the Surety may share copies of any and all statements, agreements, financial statements and any information which it now has or may hereafter obtain concerning Indemnitors with governmental regulators, auditors, co-sureties, fronting companies, and/or reinsurers.

10. **Default.** The Indemnitors shall be in default of this Agreement if: (a) Indemnitors shall become a party in any insolvency, receivership, liquidation, or bankruptcy; (b) Any Indemnitor makes representation to the Surety by or on behalf of any of the Indemnitors that prove to have been misleading or materially false when made; (c) Indemnitors fail to provide collateral in response to a proper request made by the Surety; (d) Any Indemnitors is convicted of a felony; (e) Any Indemnitor, if an individual, dies, disappears or absconds, and/or (f) Indemnitors breach any other provision of this Agreement.

11. **Indemnitors representations.** The Indemnitors represent and warrant to the Surety that they have a substantial, material, and/or beneficial interest in the obtaining of Bond(s) by any of the Indemnitors and in the transaction(s) for which any of the other Indemnitors have applied or will apply to the Surety for Bond(s) pursuant to this Agreement. Indemnitors represent and warrant that they have the full power and authority to execute, deliver and perform this Agreement and to carry out the obligations stated herein. Indemnitors further represent and warrant that their execution, delivery and performance of this Agreement does not and will not conflict with, constitute a default under, or result in a breach or violation of any of their respective organizational documents, any law, governmental rule or regulation, or any applicable order, writ, injunction, judgment or decree of any court or governmental authority, or any other agreement binding upon Indemnitors.

12. **Surety's Rights to Release of Bonds and Indemnitors' Waiver.** The Surety may, in its sole discretion, determine one or more of the following: (a) the Indemnitors financial condition has been or is believed to be deteriorating; or (b) there has been or is believed to be some other change that adversely impacts the Surety's risk under the Bond(s). In such an event, within thirty (30) days of receipt of the Surety's written demand, the Indemnitors shall procure the full and complete release of the Bond(s) by providing competent written evidence of release satisfactory to the Surety, in its sole discretion. If Indemnitors fail to provide the aforementioned release Indemnitors shall, within an additional seven (7) days, provide the Surety with collateral in the amount of 100% of all unreleased liability under the Bond(s). The liability shall be determined at the time of the Surety's written demand. Collateral will be in the form of (a) an irrevocable letter of credit in form, content, and issued by a financial institution acceptable to the Surety; (b) a pledged money market account, in the form, content, and issued by a financial institution acceptable to the Surety; and/or (c) other collateral in form, content, and substance acceptable to the Surety, in its sole discretion. Collateral previously provided to the Surety may be utilized to establish compliance with this provision. If the liability subsequently increases, then it is the Indemnitors' responsibility to ensure continued compliance with this provision at all times.

The Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest this requirement to provide collateral under this Agreement (individually and collectively, the "Collateral Requirement"). The Indemnitors stipulate and agree that the Surety will suffer irreparable harm and will not have an adequate remedy at law should Indemnitors fail to perform the Collateral Requirement and further agree as a result that the Surety is entitled to specific performance of the Collateral Requirement. The Surety's failure to act to enforce its right to specific performance shall not be construed as a waiver of that right, which right may be enforced at any time at the Surety's sole discretion. Indemnitors further agree that this Collateral Requirement shall not limit or be deemed a waiver of the Surety's other rights, which it may exercise in its sole discretion, under this Agreement or otherwise to cancel Bond(s), to demand collateral, or to take any other actions the Surety deems necessary and/or prudent, in its sole discretion, to mitigate actual or potential Losses under any and all Bond(s) written in accordance with this Agreement. The exercise of such additional rights shall not be contingent upon the Surety's enforcement of this provision. Collateral to be provided to the Surety shall be sent by delivery only for overnight packages: Attn: Treasurer, Argo Surety, 175 E. Houston St., Suite 1300, San Antonio, TX 78205.

13. **Claim Settlement.** The Surety shall have the right, in its sole discretion, to determine for itself and Indemnitors whether any claim, demand or suit brought against the Surety or any Indemnitor in connection with or relating to any Bond shall be paid, compromised, settled, tried, defended or appealed, and its determination shall be final, binding and conclusive upon the Indemnitors. The Surety shall be entitled to immediate reimbursement for any and all Loss incurred under the belief it was necessary or expedient to make such payments.

14. **Demand Bonds.** The obligee or beneficiary under certain Bond(s) may make a demand for payment ("Demand") against the Bond(s). When such Demand is made the Surety must pay the amount of the Demand not to exceed the penal sum of the Bond(s), as well as all the necessary fees, within the time period required by the Demand. Under such Bond(s), the Surety, with the knowledge and consent of the Indemnitors has expressly waived all defenses to making such payment. If the Indemnitors receive notice from the Surety that a Demand has been made against the Bond(s) by the obligee or beneficiary, at least five (5) business days before payment of such Demand is due to the obligee, Indemnitors shall pay the Surety the full amount of the Demand, which amount shall not exceed the penal sum of the Bond as well as all necessary fees. Such payment will be made by wire transfer or otherwise in immediately available funds to the bank account specified in the notice provided to the Indemnitors by the Surety. The Indemnitors waive to the fullest extent permitted by applicable law, each and every right which they may have to contest such payment. Failure to make payment to the Surety as herein provided shall cause the Indemnitors to be additionally liable for any and all costs and expenses, including attorneys' fees, incurred by the Surety in enforcing this Agreement, together with interest on unpaid amounts due the Surety. Indemnitors stipulate and agree that the Surety will suffer immediate, irreparable harm and will have no adequate remedy at law should Indemnitors fail to perform this obligation, and therefore the Surety shall be entitled to specific performance of this obligation.

15. **Interest.** Any amount due to Surety under any provision of this Agreement shall accrue interest from the date of the Surety's demand at 130% of the prime rate of interest in effect on December 31st of the previous calendar year as published in the Wall Street Journal.

16. **Continuing Obligation.** This Agreement is a continuing obligation of the Indemnitors, and no Indemnitors shall have the right to terminate its obligations for any Bond(s) issued during the term hereof. The Indemnitors may terminate this Agreement as to future Bond(s) by notice to the Surety, but such termination as to the Indemnitors shall in no way affect the obligation of any other Indemnitors who have not given such notice. In order to terminate liability as to future Bond(s), Indemnitors must notify the Surety of such termination and state in such notice the effective date (not less than thirty days after receipt thereof by the Surety) of termination of such Indemnitors liability for future Bond(s). After the effective date of such termination, the Indemnitors giving notice of termination shall nonetheless be liable hereunder for Bond(s) executed or authorized before such date and renewal, substitutions, and extensions thereof.

17. **Survival of Indemnity.** The Indemnitors understand and agree that their obligations under this Agreement remain in full force and effect for any Bond(s) issued pursuant to this Agreement, notwithstanding that the entity on whose behalf Bond(s) were issued has been sold, dissolved or whose ownership has been otherwise altered in any way.

18. **Severability.** If any provision or portion of this Agreement shall be unenforceable, this Agreement shall not be void, but shall be construed and enforced with the same effect as though such provision or portion were omitted. This agreement is in addition to and not in lieu of any other agreement relating to the obligations described herein.

19. **Execution.** This Agreement may be executed in multiple counterparts, and by the Indemnitors on separate counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. Delivery by telecopy or email of a signed counterpart of this Agreement shall be effective as physical delivery.

20. **Photocopies.** A duplicate or facsimile copy or electronic reproduction of the original of this Agreement shall have the same force and effect as the original.

21. **Non-waiver of Surety Rights.** Nothing herein-contained shall be construed to waive or abridge any right or remedy which the Surety might have if this Agreement was not executed. The Surety's failure to act to enforce any or all of its rights under this Agreement shall not be construed as a waiver of these rights.

22. **Access to Indemnitors' Information.** Indemnitors hereby expressly authorize the Surety to access credit records and to make such pertinent inquiries as may be necessary from third party sources for underwriting purposes, claim purposes and/or debt collection. To the extent required by law, Surety will, upon request, provide notice whether or not a consumer report has been requested by Surety, and if so, the name and address of consumer reporting agency furnishing the report.

23. **Separate Suits.** Separate suits may be brought hereunder as causes of action accrue, and suit may be brought against any and all of the Indemnitors; and any suit or suits upon one or more causes of action, or against one or more of the Indemnitors, shall not prejudice or bar subsequent suits against any other Indemnitors on the same or any other causes of action, whether theretofore or thereafter accruing.

24. **Notices.** All notices and other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered against receipt therefore or mailed by registered or certified mail, return receipt requested, postage prepaid, addressed to the Surety, to: Attn: Argo Surety: P.O. Box 469011, San Antonio, TX 78246. By overnight delivery: 175 E. Houston St., Suite 1300, San Antonio, TX 78205. Such name and address may be changed by written notice given as provided in this Agreement.

25. **Choice of Law.** This Agreement shall be interpreted under the substantive law of the State of Texas, without giving effect to its choice of law principles.

26. **Choice of Forum.** In any legal proceeding brought by or against the Surety that in any way relates to this Agreement, each Indemnitor for itself and its property, irrevocably and unconditionally submits to the exclusive jurisdiction, at the sole and exclusive option of the Surety, of the courts in any state in which any Indemnitor resides, has property, or in which any Contract is performed, Indemnitors hereby irrevocably and unconditionally submit to the jurisdiction of said courts and waive and agree not to assert any claim that they are not subject to the jurisdiction of any such court, that such proceeding is brought in an inconvenient forum or that the venue of such proceeding is improper.

27. **Collateral and Letters of Credit.** If Surety has or obtains collateral or letters of credit, Surety shall not have any obligations to release collateral or letters of credit or turn over the proceeds thereof until it shall have received a written release in form and substance satisfactory to Surety with respect to each and every Bond. Any collateral or letters of credit provided to Surety by any Indemnitors or any third party, or the proceeds thereof, may be applied to any Losses. The Surety shall not pay interest on any collateral it holds.

28. **Security Interest.** The Surety may execute or procure Bond(s) that guarantee the Indemnitors' obligations or performance under one or more contracts (each a "Bonded Contract"). The Indemnitors shall be considered in default of a Bonded Contract if any of the following occur: (a) a declaration of default by any Bonded Contract owner; (b) an actual breach or abandonment of the Bonded Contract; and/or (c) an improper diversion of Bonded Contract funds or Indemnitors' assets to the detriment of the Bonded Contract obligations.

In the event of a default under a Bonded Contract, Indemnitors grant to Surety a security interest in all equipment, machinery, inventory, materials, and all proceeds and products in connection with any Bonded Contract. This Agreement shall for all purposes constitute a Security Agreement and Financing Statement for the benefit of Surety in accordance with the Uniform Commercial Code ("UCC") and all similar statutes. In the event there is an act of default under any Bonded Contract, Indemnitors hereby irrevocably authorize Surety, without notice to any of the Indemnitors, to perfect the security interest granted herein by filing a UCC-1 and/or this Agreement or a copy or other reproduction of this Agreement. Surety may add schedules or other documents to this Agreement as necessary to perfect its rights. The failure to file or record this Agreement or any financing statement shall not release or excuse any of the obligations of Indemnitors under this Agreement. The Surety's exercise of any of its rights as a secured creditor under this Agreement shall not be a waiver of any of the Surety's legal or equitable rights or remedies, including the Surety's right of subrogation.

29. **Change in Control.** The Indemnitors agree to provide the Surety with, at least, forty-five (45) days prior written notice of a Change in Control (defined below). Upon receipt of such notice, the Surety shall advise the Indemnitors, in writing of Surety's election to (i) approve such Change in Control or (ii) demand that the Indemnitors' procure the discharge of the Surety from any Bonds and all liability by reason thereof. If the Indemnitors fail to give the Surety timely notice of a Change in Control or if the Surety does not approve the written demand, the Indemnitors shall deposit a sum of money or collateral, of a type and value satisfactory to the Surety, equal to the aggregate penal sum of the then outstanding Bonds, as determined by the Surety in its sole discretion. The Indemnitors hereby acknowledge that if they or any one of them breaches the obligations set forth in this paragraph, the Surety will not have an adequate remedy at law, will suffer irreparable harm and shall be entitled to injunctive relief, enforcing the terms of this paragraph, as well as a final decree, order or judgment granting Surety specific performance of the terms of this Agreement.

"Change in Control" shall mean: (a) the transfer, merger or consolidation (in one or more transactions) of all or substantially all of the assets of any non-individual bond principal or Indemnitor; (b) the acquisition (in one or more transactions) by any person or group, directly or indirectly, of fifty (50%) percent or more of the beneficial ownership or control of any bond principal or Indemnitor; or (c) the acquisition by any bond principal or Indemnitor, directly or indirectly, of fifty (50%) percent or more of the beneficial ownership or control in any joint venture, subsidiary, division, affiliate, limited partnership, limited liability partnership, limited liability company or other entity through the issuance of ten (10%) percent or more of the voting power of the total outstanding voting stock of any bond principal or Indemnitor.

30. **Attorney-In-Fact.** The Indemnitors do hereby irrevocably nominate and appoint any officer of Surety as the true and lawful attorney-in-fact of the Indemnitors, with full right and authority to execute on behalf of, and sign the name of, the Indemnitors to any voucher, release, satisfaction, check, bill of sale or all or any property assigned by this Agreement to the Surety, or any other document necessary or desired to carry into effect the purpose of this Agreement. The Indemnitors hereby ratify and confirm all that such attorney-in-fact or Surety may do for the purposes set forth in this Agreement. The Indemnitors specifically agree to protect, indemnify and save and hold harmless Surety and such attorney-in-fact against any and all claims, damages, costs and expenses that may in any way arise due to the exercise of the assignments contained in this Agreement and the powers herein granted, specifically waiving any claim which the Indemnitors have or might hereafter have against Surety or its attorney-in-fact on account of anything done in enforcing the terms of this Agreement.

31. **Other Indemnity.** This Agreement is in addition to and not in lieu of any other agreements and obligations undertaken in favor of Surety, whether now existing or entered into hereafter.

32. **Amendment.** The rights and remedies afforded to Surety by the terms of this Agreement can only be impaired by a written rider to this Agreement signed by an authorized employee of the Surety.

33. **Date.** The date of this Agreement shall be the earliest date any Indemnitor executes this Agreement.

34. **Special Provisions:**

35. EACH OF THE INDEMNITORS REPRESENT TO THE SURETY THAT SUCH INDEMNITORS HAVE CAREFULLY READ THIS ENTIRE AGREEMENT, AND THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN. IN TESTIMONY HEREOF WE THE INDEMNITORS HAVE SET OUR HANDS AND FIXED OUR SEALS AS SET FORTH BELOW. THE SURETY'S ACCEPTANCE OF THIS AGREEMENT SHALL BE PRESUMED AND IS DEEMED EFFECTIVE BY ITS RECEIPT OF THIS AGREEMENT, ITS RELIANCE HEREON, OR BY ITS EXECUTION OF ANY BOND FOR THE INDEMNITORS OR ANY OF THEM, WITH OR WITHOUT THE SURETY'S SIGNATURE BEING AFFIXED THERETO.

**IF INDEMNITOR IS A CORPORATION, LIMITED LIABILITY COMPANY OR PARTNERSHIP, SIGN BELOW:**

Instructions:
1. If the entity is: 1) a corporation, the secretary and an authorized officer should sign on behalf of the corporation, 2) a limited liability company, the manager(s) or member(s) should sign on behalf of the LLC, 3) a partnership, the partner(s) should sign on behalf of the partnership, or 4) a trust, all trustees should sign.
2. Please provide the entity's federal tax identification number on the line provided.
3. Two signatures are required for all entities and all signatures must be notarized and dated.

Each of the undersigned hereby affirms to the Surety as follows: I am a duly authorized official of the business entity Indemnitor on whose behalf I am executing this Agreement. In such capacity I am familiar with all of the documents which set forth and establish the rights which govern the affairs, power and authority of such business entity including, to the extent applicable, the certificate or articles of incorporation, bylaws, corporate resolutions and/or partnership, operating or limited liability agreements of such business entity. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, I hereby affirm that such entity has the power and authority to enter into this Agreement and that the individuals executing this Agreement on behalf of such entity are duly authorized to do so.

Dated: 4/3/2017

Peabody Energy Corporation
Indemnitor Name

_____
Signature of Authorized Official                     Seal

Walter L. Hawkins, Jr, SVP Finance
Print or Type Name and Title

Federal Tax ID #

_____
Signature of Authorized Official                     Seal

James A. Tichenor, VP & Treasurer
Print or Type Name and Title

**ACKNOWLEDGEMENT**
STATE OF Missouri                City of St. Louis

On this 2nd day of March, 2017, before me personally appeared Walter L. Hawkins, Jr., known or proven to me to be the SVP Finance of the entity executing the foregoing instrument ("Entity") and James A. Tichenor, known or proven to me to be the VP & Treasurer of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said Entity and that it was affixed and that they executed said instrument by authority of the Entity. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

Wanda J. Martin
Notary Public residing at 701 Market St., St. Louis, MO
(Commission expires 2/29/2020

WANDA J. MARTIN
NOTARY PUBLIC - NOTARY SEAL
STATE OF MISSOURI
ST. LOUIS CITY
MY COMMISSION EXPIRES 2/29/2020
COMMISSION #08511270

Argo GIA(S) Aug. 2016

Page 4 of 8

**Peabody Midwest Operations, LLC**
Indemnitor Name

*[signature]*
Signature of Authorized Official          Seal

Walter L. Hawkins, Jr., SVP Finance
Print or Type Name and Title

Federal Tax ID # *[redacted]*

*[signature]* James A. Tichenor
Signature of Authorized Official          Seal

James A. Tichenor, VP & Treasurer
Print or Type Name and Title

ACKNOWLEDGEMENT
STATE OF Missouri          City of St. Louis

On this 2nd day of March, 2017, before me personally appeared Walter L. Hawkins, Jr., known or proven to me to be the SVP Finance of the entity executing the foregoing instrument ("Entity") and James A. Tichenor, known or proven to me to be the VP & Treasurer of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said Entity and that it was affixed and that they executed said instrument by authority of the Entity. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

*[Notary stamp: WANDA J. MARTIN, NOTARY PUBLIC - NOTARY SEAL, STATE OF MISSOURI, ST. LOUIS CITY, MY COMMISSION EXPIRES 2/29/2020, COMMISSION #09511270]*

*[signature]* Wanda J. Martin
Notary Public residing at 701 Market St, St Louis MO
(Commission expires 2/29/2020)

---

**Peabody Bear Run Mining, LLC**
Indemnitor Name

*[signature]*
Signature of Authorized Official          Seal

Walter L. Hawkins, Jr., SVP Finance
Print or Type Name and Title

Federal Tax ID # *[redacted]*

*[signature]* James A. Tichenor
Signature of Authorized Official          Seal

James A. Tichenor, VP & Treasurer
Print or Type Name and Title

ACKNOWLEDGEMENT
STATE OF Missouri          City of St. Louis

On this 2nd day of March, 2017, before me personally appeared Walter L. Hawkins, Jr., known or proven to me to be the SVP Finance of the entity executing the foregoing instrument ("Entity") and James A. Tichenor, known or proven to me to be the VP & Treasurer of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said Entity and that it was affixed and that they executed said instrument by authority of the Entity. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

*[signature]* Wanda J. Martin
Notary Public residing at 701 Market St, St Louis MO
(Commission expires 2/29/2020)

*[Notary stamp: WANDA J. MARTIN, NOTARY PUBLIC - NOTARY SEAL, STATE OF MISSOURI, ST. LOUIS CITY, MY COMMISSION EXPIRES 2/29/2020, COMMISSION #09511270]*

**Peabody Gateway North Mining, LLC**
Indemnitor Name

*/s/ Walter L. Hawkins Jr./*     Seal
Signature of Authorized Official

Walter L. Hawkins, Jr., SVP Finance
Print or Type Name and Title

Federal Tax ID #

*/s/ James E. Tichenor/*     Seal
Signature of Authorized Official

James A. Tichenor, VP & Treasurer
Print or Type Name and Title

ACKNOWLEDGEMENT
STATE OF Missouri     City/County of St. Louis

On this 2nd day of March, 2017, before me personally appeared Walter L. Hawkins, Jr., known or proven to me to be the SVP Finance of the entity executing the foregoing instrument ("Entity") and James A. Tichenor, known or proven to me to be the VP & Treasurer of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said Entity and that it was affixed and that they executed said instrument by authority of the Entity. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

*/s/ Wanda J. Martin/*
Notary Public residing at 701 Market St., St. Louis MO
(Commission expires 2/29/2020)

[SEAL: WANDA J. MARTIN, NOTARY PUBLIC - NOTARY SEAL, STATE OF MISSOURI, ST. LOUIS CITY, MY COMMISSION EXPIRES 2/29/2020, COMMISSION #09511270]

---

**New Mexico Coal Resources, LLC**
Indemnitor Name

*/s/ Walter L. Hawkins Jr./*     Seal
Signature of Authorized Official

Walter L. Hawkins, Jr., SVP Finance
Print or Type Name and Title

Federal Tax ID #

*/s/ James E. Tichenor/*     Seal
Signature of Authorized Official

James A. Tichenor, VP & Treasurer
Print or Type Name and Title

ACKNOWLEDGEMENT
STATE OF Missouri     City/County of St. Louis

On this 2nd day of March, 2017, before me personally appeared Walter L. Hawkins, Jr., known or proven to me to be the SVP Finance of the entity executing the foregoing instrument ("Entity") and James A. Tichenor, known or proven to me to be the VP & Treasurer of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said Entity and that it was affixed and that they executed said instrument by authority of the Entity. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

*/s/ Wanda J. Martin/*

Notary Public residing at 701 Market St., St. Louis MO
(Commission expires 2/29/2020)

[SEAL: WANDA J. MARTIN, NOTARY PUBLIC - NOTARY SEAL, STATE OF MISSOURI, ST. LOUIS CITY, MY COMMISSION EXPIRES 2/29/2020, COMMISSION #09511270]

**El Segundo Coal Company, LLC**
Indemnitor Name

_Signature_ (Walter L. Hawkins Jr.)
Signature of Authorized Official          Seal

Walter L. Hawkins, Jr., SVP Finance
Print or Type Name and Title

Federal Tax ID #  [REDACTED]

_Signature_ (James A. Tichenor)
Signature of Authorized Official          Seal

James A. Tichenor, VP & Treasurer
Print or Type Name and Title

ACKNOWLEDGEMENT
STATE OF Missouri           City of St. Louis

On this 2nd day of March, 2017, before me personally appeared Walter L. Hawkins, Jr., known or proven to me to be the SVP Finance of the entity executing the foregoing Instrument ("Entity") and James A. Tichenor, known or proven to me to be the VP & Treasurer of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said Entity and that it was affixed and that they executed said instrument by authority of the Entity. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_Signature_ Wanda J. Martin
Notary Public residing at 701 Market St., St. Louis, MO
(Commission expires 2/29/2020)

> WANDA J. MARTIN
> NOTARY PUBLIC - NOTARY SEAL
> STATE OF MISSOURI
> ST. LOUIS CITY
> MY COMMISSION EXPIRES 2/29/2020
> COMMISSION #09611270

---

**Peabody Powder River Operations, LLC**
Indemnitor Name

_Signature_ (Walter L. Hawkins Jr.)
Signature of Authorized Official          Seal

Walter L. Hawkins, Jr., SVP Finance
Print or Type Name and Title

Federal Tax ID #  [REDACTED]

_Signature_ (James A. Tichenor)
Signature of Authorized Official          Seal

James A. Tichenor, VP & Treasurer
Print or Type Name and Title

ACKNOWLEDGEMENT
STATE OF Missouri           City of St. Louis

On this 2nd day of March, 2017, before me personally appeared Walter L. Hawkins, Jr., known or proven to me to be the SVP Finance of the entity executing the foregoing Instrument ("Entity") and James A. Tichenor, known or proven to me to be the VP & Treasurer of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said Entity and that it was affixed and that they executed said instrument by authority of the Entity. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_Signature_ Wanda J. Martin
Notary Public residing at 701 Market St., St. Louis, MO
(Commission expires 2/29/2020)

> WANDA J. MARTIN
> NOTARY PUBLIC - NOTARY SEAL
> STATE OF MISSOURI
> ST. LOUIS CITY
> MY COMMISSION EXPIRES 2/29/2020
> COMMISSION #09611270

**BTU Western Resources, Inc.**
Indemnitor Name

_[signature]_
Signature of Authorized Official                    Seal

Walter L. Hawkins, Jr., SVP Finance
Print or Type Name and Title

[Federal Tax ID # — redacted]

_[signature]_ James A. Tichenor
Signature of Authorized Official                    Seal

James A. Tichenor, VP & Treasurer
Print or Type Name and Title

ACKNOWLEDGEMENT
STATE OF Missouri                    City of St. Louis

On this 2nd day of March, 2017, before me personally appeared Walter L. Hawkins, Jr., known or proven to me to be the SVP Finance of the entity executing the foregoing instrument ("Entity") and James A. Tichenor, known or proven to me to be the VP & Treasurer of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said Entity and that it was affixed and that they executed said instrument by authority of the Entity. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_[Notary stamp: WANDA J. MARTIN, NOTARY PUBLIC - NOTARY SEAL, STATE OF MISSOURI, ST. LOUIS CITY, MY COMMISSION EXPIRES 2/29/2020, COMMISSION #09511270]_

_[signature]_ Wanda J. Martin
Notary Public residing at 701 Market St., St. Louis, MO
(Commission expires 2/29/2020)

---

**Peabody Midwest Mining, LLC**
Indemnitor Name

_[signature]_
Signature of Authorized Official                    Seal

Walter L. Hawkins, Jr., SVP Finance
Print or Type Name and Title

[Federal Tax ID # — redacted]

_[signature]_ James A. Tichenor
Signature of Authorized Official                    Seal

James A. Tichenor, VP & Treasurer
Print or Type Name and Title

ACKNOWLEDGEMENT
STATE OF Missouri                    City of St. Louis

On this 2nd day of March, 2017 before me personally appeared Walter L. Hawkins, Jr., known or proven to me to be the SVP Finance of the entity executing the foregoing instrument ("Entity") and James A. Tichenor, known or proven to me to be the VP & Treasurer of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said Entity and that it was affixed and that they executed said instrument by authority of the Entity. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_[signature]_ Wanda J. Martin
Notary Public residing at 701 Market St., St. Louis, MO
(Commission expires 2/29/2020)

_[Notary stamp: WANDA J. MARTIN, NOTARY PUBLIC - NOTARY SEAL, STATE OF MISSOURI, ST. LOUIS CITY, MY COMMISSION EXPIRES 2/29/2020, COMMISSION #09511270]_